IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| MICHAEL L., § | |
|     PLAINTIFF, § | |
| § | |
| V. § | CIVIL CASE NO. 3:18-CV-0010-G-BK |
| § | |
| NANCY BERRYHILL, § | |
| ACTING COMMISSIONER OF SOCIAL § | |
| SECURITY ADMINISTRATION, § | |
| § | |
|     DEFENDANT. § | |

**FINDINGS, RECOMMENDATIONS, AND CONCLUSIONS
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636 and *Special Order 3*, this cause is before the Court for a recommendation on the parties' cross-motions for summary judgment. Doc. 15; Doc. 16. Upon consideration of the parties' motions and for the reasons stated herein, Plaintiff's *Motion for Summary Judgment*, Doc. 15, should be **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 16, should be **GRANTED**, and the Commissioner's decision should be **AFFIRMED**.

I. **BACKGROUND**

    A. **Procedural History**

Plaintiff seeks judicial review of a final decision by the Commissioner denying his application for Disability Insurance Benefits ("DIB") under the Social Security Act ("the Act"). Doc. 1 at 1. Plaintiff filed for benefits in October 2014, claiming that he became disabled in February 2013. Doc. 12-1 at 155-56. Because Plaintiff's date last insured ("DLI") was in September 2013, Doc. 12-1 at 163, the period under consideration for purposes of his DIB application is from February through September 2013. Plaintiff's claims were denied at all

administrative levels, and he now appeals to this Court pursuant to 42 U.S.C. §405(g). Doc. 12-1 at 4-9; Doc. 12-1 at 10-26; Doc. 12-1 at 83-87; Doc. 12-1 at 92-95.

**B. Factual History**

Plaintiff was 56 years old at the time the administrative law judge ("ALJ") rendered her decision. Doc. 12-1 at 21; Doc. 12-1 at 155. He had a college degree and past relevant work as a mortgage loan officer, office clerk, security guard, and salesperson. Doc. 12-1 at 33-35.

In terms of his relevant medical history, Plaintiff's pre-DLI records showed that he (1) has undergone two surgical procedures on his right shoulder for degenerative joint disease and osteoarthritis; (2) has bilateral knee degenerative disease and bilateral chronic ankle sprains with mild degenerative changes; and (3) has been diagnosed with depression. Doc. 12-1 at 374-75; Doc. 12-1 at 631-38; Doc. 12-1 at 667-71.

In January 2013, Plaintiff presented to the veteran's hospital after a fall, and x-rays revealed progressive tri-compartmental degenerative joint disease of both knees when compared to earlier x-rays. Doc. 12-1 at 288. During a kinesiotherapy consultation shortly thereafter, Plaintiff's gait was slightly antalgic, he was at full weight bearing status, and he used a single point cane. Doc. 12-1 at 362. He could not climb stairs, but he could ambulate 150 feet with the cane "safely and efficiently." Doc. 12-1 at 363. In May 2013, Plaintiff reported that he was treating his knee pain with ibuprofen which helped him. Doc. 12-1 at 368. Doc. 12-1 at 368. In July 2013, medical records state that Plaintiff could walk 300 feet. Doc. 12-1 at 359. Plaintiff complained of depression throughout this time period. Doc. 12-1 at 518-19, 522-23, 542.

In July 2013, Plaintiff reported that he was experiencing chronic low back pain, but ibuprofen helped. Doc. 12-1 at 510. In August 2013, Plaintiff had a Synvisc One injection

administered to his right knee.[1]  Doc. 12-1 at 513.  In September 2013, Plaintiff underwent an MRI of the lumbar spine which revealed multilevel degenerative changes.  Doc. 12-1 at 285-87.  As previously stated, Plaintiff's DLI was September 30, 2013.  Doc. 12-1 at 87.

### C. The ALJ's Findings

The ALJ held that Plaintiff has the severe impairments of: degenerative joint disease of the bilateral knees; degenerative joint disease of the right shoulder; degenerative disc disease; and depression.  Doc. 12-1 at 15.  The ALJ found the Plaintiff retained the residual functional capacity ("RFC") to perform a range of light work, limited by his inability to reach above shoulder level with his right arm and ability to understand, remember, and carry out detailed (but not complex) work.  Doc. 12-1 at 17.  The ALJ concluded that Plaintiff was not disabled because, although he could not perform his past relevant work, he could perform other work such as a credit reference clerk, a throw-out clerk, and a civil service clerk.  Doc. 12-1 at 20-21.

### I.  APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least twelve months.  42 U.S.C. § 423(d)(1)(A).  In determining whether an individual is disabled, the Commissioner uses a five-step inquiry: (1) an individual who is working and engaging in substantial gainful activity is not disabled; (2) an individual who does not have a "severe impairment" is not disabled; (3) an

---

[1] Synvisc-One is similar to the fluid that surrounds the body's joints. Synvisc-One acts as a lubricant and shock absorber for the joints and is used to treat knee pain caused by osteoarthritis when other arthritis medications have been tried without success. https://www.drugs.com/synvisc.html (last visited Feb. 15, 2019).

individual who "meets or equals a listed impairment in Appendix 1" of the regulations will be considered disabled without consideration of vocational factors; (4) if an individual is capable of performing his past work, a finding of "not disabled" must be made; (5) if an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and RFC must be considered to determine if any other work can be performed. *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991) (per curium) (summarizing 20 C.F.R. §§ 404.1520(b)-(f), 416.920 (b)-(f)).

Under the first four steps of the analysis, the burden of proof lies with the claimant. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The analysis terminates if the Commissioner determines at any point during the first four steps that the claimant is disabled or is not disabled. *Id.* If the claimant satisfies his burden under the first four steps, the burden shifts to the Commissioner at step five to show that there is other gainful employment available in the national economy that the claimant can perform. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the Grid Rules, vocational expert testimony, or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

Judicial review of the Commissioner's decision is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied proper legal standards in evaluating the evidence. *Greenspan*, 38 F.3d at 236; 42 U.S.C. §§ 405(g), 1383(C)(3). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant and sufficient evidence as a reasonable mind might accept as adequate to support a conclusion. *Leggett*, 67 F.3d at 564. Under this standard, the reviewing court does not reweigh

4

the evidence, retry the issues, or substitute its own judgment, but rather, scrutinizes the record to determine whether substantial evidence is present. *Greenspan*, 38 F.3d at 236.

In considering the parties' summary judgment arguments, the Court has relied upon their assessment of and citation to the evidence of record. The Court is not under any obligation to probe the record to find supporting evidence for one side or the other. *See* FED. R. CIV. P. 56 (the movant and opponent of a motion for summary judgment must support their positions by "citing to particular parts of materials in the record"); *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (the court has no obligation under Rule 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment").

## II. DISCUSSION

### A. Whether the ALJ Properly Considered Whether Plaintiff Met Listing 1.02

Plaintiff first contends that the ALJ erred in stating that she had considered whether Plaintiff met Listing 1.02 (major dysfunction of a joint), but she never explicitly analyzed the Listing in her opinion, which Plaintiff argues denied him a proper sequential disability analysis. Doc. 15 at 10-11, 13-14. Plaintiff asserts that he met Listing 1.02 because he exhibited gross anatomical deformity in both of his knees which left him unable to ambulate effectively. Doc. 15 at 11-12.

Defendant argues that the ALJ did sufficiently analyze whether Plaintiff satisfied Listing 1.02 because she ALJ discussed evidence that revealed Plaintiff could ambulate effectively, although the analysis did not appear in the ALJ's discussion of step three. Doc. 17 at 5-6. Regardless of whether the ALJ did err, Defendant contends that any error is harmless because the record evidence demonstrates that Plaintiff did not meet Listing 1.02 because he could ambulate effectively. Doc. 17 at 5-8.

5

As relevant here, Section 1.00(B)(1)(a) provides that "Regardless of the cause(s) of a musculoskeletal impairment, functional loss for purposes of these listings is defined as the inability to ambulate effectively on a sustained basis for any reason." 20 C.F.R. Pt. 404, Subpt. P, App. 1. Section 1.00(B)(1)(a). Section 1.00(B)(2)(b) provides that:

> (1) [ ] Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. . . .
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

20 C.F.R. Pt. 404, Subpart. P, App. 1. Section 1.00(B)(2)(b).

Listing 1.02 sets out the requirements for presumptive disability if a claimant has major dysfunction of joint(s) due to any cause. The specific requirements are as follows:

> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s) [together] [w]ith: A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00(B)(2)(b) . . . .

20 C.F.R. Part 404, Subpart P, Appendix 1 § 1.02.

As an initial matter, the ALJ is not required to articulate the reasons supporting her findings within the step three portion of her opinion. *See Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990) (finding that substantial evidence supported the ALJ's denial of benefits even though the claimant argued that the ALJ erred in failing to explain why the claimant did not meet

6

step three's requirements). Thus, the sole question is whether substantial evidence supports the ALJ's finding that Plaintiff did not have an impairment that met or equaled Listing 1.02. *Bullock v. Astrue*, 277 F. App'x 325, 327-28 (5th Cir. 2007) (citing *Selders*, 914 F.2d 614).

The Court finds that substantial evidence supports the ALJ's determination that Plaintiff did not meet Listing 1.02's requirements. First, Plaintiff testified that he used only one cane, not two. Doc. 12-1 at 39. Further, while Plaintiff reported that he occasionally used a wheelchair, he points to no evidence in the record that it was prescribed. Doc. 12-1 at 19; Doc. 12-1 at 565. Plaintiff also testified that, during the relevant time frame, he could walk 50 to 60 yards until experiencing soreness and could walk up steps using a single rail. Doc. 12-1 at 41. Additionally, less than one month before Plaintiff's onset date, he underwent a gait training assessment where the examiner noted that his balance and endurance were good, he had full weight bearing status with only a slightly antalgic gait, and he could "safely and efficiently" ambulate 150 feet with his cane. Doc. 12-1 at 362-363. Indeed, by April 2013 and again in November 2013, Plaintiff's gait was noted to be unimpaired. Doc. 12-1 at 534; Doc. 12-1 at 503.

Plaintiff's activities of daily living also support the ALJ's conclusion, as he stated that he could take care of his basic hygiene needs, helped his mother with house chores, prepared simple meals in around ten to 15 minutes, shopped, attended church about once a month, could pay attention for ten to 15 minutes, got along "OK" with authority figures, and could walk half a block before needing a break. Doc. 12-1 at 41-42; Doc. 12-1 at 213-18, 246-49; Doc. 12-1 at 522. Plaintiff points to no evidence in the record suggesting that he needed a walker, two canes, or two crutches in order to ambulate as required by Listing 1.02. Defendant is thus entitled to summary judgment on this ground.

7

### B. Whether Substantial Evidence Supports the ALJ's RFC Assessment

Plaintiff argues that the ALJ relied on no medical opinion evidence and, instead, independently determined that (1) Plaintiff cannot reach above shoulder level with his right upper extremity but can frequently reach in all other directions; and (2) Plaintiff can "understand, remember, and carry out detailed but not complex work." Doc. 15 at 15-18.

Defendant responds that the ALJ properly interpreted the medical evidence in assessing Plaintiff's RFC after giving "some weight" to the opinions of two state agency medical consultants ["SAMCs"] who found that Plaintiff could perform the full range of light work. Doc. 17 at 9-10. Defendant maintains that the medical record contains sufficient information from the treating, examining, and reviewing doctors' interpretations of the raw medical data to enable the ALJ to determine Plaintiff's RFC. Doc. 17 at 10.

The RFC is an assessment, based upon all relevant evidence, of a claimant's ability to work, despite his impairments. 20 C.F.R. § 404.1545(a). Stated differently, it is the most a claimant can do, notwithstanding his physical and mental limitations. *Id.* The RFC determination falls solely to the ALJ, who is responsible for resolving any conflicts in the evidence. *See Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001) (per curiam).

In *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995), the ALJ ruled that a claimant could perform sedentary work even though there was no medical evidence or testimony supporting that conclusion. *Ripley*, 67 F.3d at 557. The appellate court noted that the claimant's record contained a vast amount of evidence establishing that he had a back problem, but did not clearly establish what effect that condition had on his ability to work. *Id*. Thus, the court remanded the case with instructions for the ALJ to obtain a report from a treating physician regarding the effects of the claimant's back condition on his ability to work. *Id*. at 557-58. Nevertheless, the

*Ripley* panel explained that "[t]he absence of such a statement . . . does not, in itself, make the record incomplete." *Id.* at 557. The panel held that reversal in such cases is only appropriate "if the applicant shows that he was prejudiced." *Id.* To demonstrate prejudice, a claimant "must show that he could and would have adduced evidence that might have altered the result." *Brock v. Chater*, 84 F.3d 726, 728-29 (5th Cir. 1996).

In the administrative proceedings, two SAMCs determined that Plaintiff could perform light work and had no non-exertional limitations. Doc. 12-1 at 77-82. The ALJ gave those opinions "some weight," but nevertheless included in the RFC assessment some limitations relating to Plaintiff's right shoulder and mental health. Doc. 12-1 at 20. Contrary to Plaintiff's implication, the ALJ did not reject the assessments of the SAMCs by including additional restrictions in her RFC assessment, and the inclusion of the restrictions is not reversible error. *Martin v. Colvin*, No. 14-CV-3119-BK, 2015 WL 2114506, at *6 (N.D. Tex. May 5, 2015) (Toliver, J.) (finding no error where the ALJ imposed more restrictions on the claimant's activity than the limitations determined by the SAMCs); *Asher v. Colvin*, No. 4:12-CV-831-A, 2014 WL 888350, at *12 (N.D. Tex. March 6, 2014) (McBryde, J.) (same); *Lott v. Astrue*, No. 3:08-CV-1234-BD, 2010 WL 26472, at *5 (N.D. Tex. Jan. 4, 2010) (Kaplan, J.) (same).

In any event, Plaintiff cannot demonstrate prejudice because he has not pointed to any evidence that he could or would have produced that might have changed the ALJ's decision. *Brock*, 84 F.3d 728-29. Indeed, substantial evidence supports the ALJ's decision to limit Plaintiff's reach on the right arm to shoulder level − if such limitation was necessary all. The medical records related to Plaintiff's right shoulder during the relevant time frame are scant. Throughout the summer and fall of 2013 and again in January 2014, Plaintiff complained of low back and bilateral knee pain, but did not mention that his right shoulder was causing any

problems. Doc. 12-1 at 355-57; Doc. 12-1 at 501, 506, 508, 511-12; Doc. 12-1 at 520. In August 2013, Plaintiff reported that he had "intermittent" right shoulder pain, which he rated a two on a scale of one to ten, but he stated that medication and physical therapy helped alleviate the pain. Doc. 12-1 at 515; *see also* Doc. 12-1 at 526 (rating right shoulder pain at four in June 2013 and stating that medication and physical therapy helped); Doc. 12-1 at 530 (rating right shoulder pain at zero in April 2013). Plaintiff also was noted to have a stable right shoulder post-surgery. Doc. 12-1 at 515. In light of Plaintiff's minimal shoulder problems during the relevant time frame and his failure to point the Court to any other evidence he could have adduced to the contrary, he cannot demonstrate prejudice.

  Plaintiff also has not demonstrated prejudice relating to the ALJ's decision that he could perform detailed work. A reviewing SAMC found that Plaintiff's depression was "non-severe," noting Plaintiff's responsiveness to antidepressants, his thought processes were logical and goal-directed, his thought content was within normal limits, and his memory was intact. Doc. 12-1 at 77-78; *see also* Doc. 12-1 at 503; Doc. 12-1 at 522-24 (medical records indicating that Plaintiff was fully oriented in all spheres, his memory was intact, his thought process was logical and goal directed, and his insight and judgment were fair). The ALJ noted Plaintiff's diagnosis of major depressive disorder but pointed to various medical records indicating that Plaintiff's mental status exams were largely normal. Doc. 12-1 at 19-20; see Doc. 12-1 at 534-35 (Plaintiff reporting in April 2013 that his antidepressant was working well and he denied feelings of hopelessness or helplessness, his memory was intact, his thought process was logical and goal-oriented, his insight and judgment were fair, his energy level was good, and he did not lack the cognitive ability to make relevant decisions); Doc. 12-1 at 510 (Plaintiff reporting in July 2013 that his depression was "stable."); Doc. 12-1 at 502-03 (Plaintiff informing his provider in

November 2013 that he was compliant with his psychiatric medications and felt they were working well).  Doc. 12-1 at 502-03.  Moreover, it was frequently noted in the evidence of record that Plaintiff, a college graduate, understood patient education instructions, had a good level of understanding when informed about advance directives, had "no apparent barriers or issues" that may affect his learning ability, and had "extensive" knowledge regarding his health conditions.  *See, e.g*., Doc. 12-1 at 519-21, 523-24.  Thus, Defendant is entitled to summary judgment on this ground.

### III.    CONCLUSION

For the foregoing reasons, Plaintiff's *Motion for Summary Judgment*, Doc. 15, should be **DENIED**, Defendant's *Motion for Summary Judgment*, Doc. 16, should be **GRANTED**, and the Commissioner's decision should be **AFFIRMED.**

**SO RECOMMENDED** on February 20, 2019.

_____
RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute,* 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).